UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 22-125-CJS**

**SENA RENEE FARELL**                                                                                   **PLAINTIFF**

v.                           **MEMORANDUM OPINION AND ORDER**

**MARTIN O'MALLEY, Commissioner**[1]
**Social Security Administration**                                                                      **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff Sena Renee Farrell brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act. (*See* R. 1). The parties have consented to the undersigned's authority to adjudicate this action pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* R. 11). At issue is whether the Administrative Law Judge erred in finding Plaintiff "not disabled" within the meaning of the Social Security Act and therefore not entitled to benefits. The Court, having reviewed the record and the parties' dispositive motion filings, for the reasons set forth herein, will **affirm** the Commissioner's decision.

**I.  STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an administrative law judge ("ALJ") in social security cases, the only issues before the reviewing court are whether the ALJ applied correct legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 229 (1938)). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

To qualify for benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act ("Act"). 42 U.S.C. §§ 423(a)(1)(E), *et seq*. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act requires the Commissioner to follow a five-step analysis when evaluating a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing *Abbott,* 905 F.2d at 923 (citing 20 C.F.R. § 404.1520(b))). Second, if the claimant is not engaged in substantial gainful activity, she must

2

demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing *Abbott,* 905 F.2d at 923 (citing 20 C.F.R. § 404.1520(c))). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education, or work experience. *Id*. (citing 20 C.F.R. § 404.1520(d)). Fourth, if the impairment does not meet or equal a listed impairment, then the claimant must show her impairment prevents her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

II.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Sena Farrell was 48 years old at the time of the May 15, 2018, alleged onset date, and 51 years old at the time of the ALJ's September 10, 2021, decision. (*See* Administrative Record ("A.R.") at 7, 46, 72, 88). Farrell has a twelfth-grade education, received a certificate as a pharmacy technician, and has previous work as a help desk supervisor, a pharmacy technician, and a bus driver. (*See id*. at 47-55, 67, 230). She alleges disability due to chronic neck pain, severe gastroesophageal reflux disease, irritable bowel syndrome, urinary incontinence, a spinal cord stimulator, migraines, obsessive-compulsive disorder, claustrophobia, lumbar disc disease with radiculopathy, a lumbar spine discectomy, and obesity. (*See id*. at 74-75).

3

Farrell filed an application for disability insurance benefits on April 6, 2020. (*See id*. at 10, 184-89). The application was denied initially on July 13, 2020 (*see id*. at 110-13), and upon reconsideration on January 7, 2021 (*see id*. at 118-32). Farrell appeared and testified at an administrative hearing before ALJ Lloyd Hubler, III, on June 14, 2021.[2] (*See id*. at 10, 45-66). The ALJ also heard testimony from an impartial vocational expert ("VE"). (*See id*. at 10, 66-70). After receiving testimony and reviewing the record, the ALJ issued a written decision on September 10, 2021, finding Farrell was not disabled under the Act and therefore not entitled to benefits. (*See id*. at 7-25).

The ALJ used the five-step sequential process to determine that Farrell was not disabled. (A.R. at 11-24); *see also* 20 C.F.R. § 404.1520(a)(4). The ALJ determined at Step One that Farrell had not engaged in substantial gainful activity since May 15, 2018, the alleged onset date. (*See* A.R. at 13) (citing 20 C.F.R.§ 404.1571, *et seq*.).[3] At Step Two, the ALJ found that Farrell suffered from severe impairments, namely, degenerative disc disease and obesity. (*See id*.) (citing 20 C.F.R. § 404.1520(c)). At Step Three, the ALJ concluded Farrell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*See id*. at 16) (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). Before turning to the fourth step, the ALJ determined that

---

[2] Due to the COVID-19 pandemic, the hearing was conducted via telephone. (*See* A.R. at 10).

[3] Farrell was employed after May 15, 2018, but the ALJ found that her employment constituted an "unsuccessful work attempt" and therefore could not be used to show that she could perform substantial gainful activity. (A.R. at 13) (citing 20 C.F.R. §§ 404.1574(c), 416.974(c) and Social Security Ruling ("SSR") 84-25). In any event, Farrell amended her alleged onset date to April 6, 2020, the date she submitted her application for disability insurance benefits and "stopped working altogether" (*id*. at 45-46), and the ALJ ultimately concluded that Farrell had "not engaged in substantial gainful activity since the *amended* alleged onset date" (*id*. at 13) (emphasis added).

4

Farrell had the residual functional capacity ("RFC") "to perform light work" with the following limitations:

> The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. The claimant is limited to frequent exposure to vibration. She must avoid exposure to hazardous moving machinery or unprotected heights.

(*Id*. at 16) (citing 20 C.F.R. § 404.1567(b)). At Step Four, the ALJ found that Farrell was capable of performing past relevant work as a Help Desk Supervisor and Pharmacy Tech. (*See id*. at 24) (citing 20 C.F.R. § 404.1565). Thus, the ALJ concluded that Farrell had not been under a disability, as defined in the Social Security Act, from May 15, 2018, through the date of the decision. (*See id*. (citing 20 C.F.R. § 404.1520(f)).[4]

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on August 16, 2022. (*See id*. at 1-6). On October 11, 2022, Farrell filed the instant action seeking judicial review pursuant to 42 U.S.C. § 405(g). (*See* R. 1). The Commissioner subsequently filed an Answer (R. 8) and a certified Transcript of the Administrative Proceedings (R. 8-1). Farrell and the Commissioner have filed cross Motions for Summary Judgment. (*See* R. 16; R. 17; R. 19; R. 20).

### III. ANALYSIS

Farrell takes issue with the ALJ's RFC finding, arguing that the ALJ failed to properly consider her complaints of pain and resulting physical limitations and failed to address her non-severe mental limitations. (*See* R. 17). Because the ALJ applied the correct legal standard and his

---

[4] At step five of the sequential analysis, if the claimant cannot perform her past relevant work, the ALJ must determine whether she can perform other work that exists in the national economy. *See Vance*, 260 F. App'x at 804. Here, the ALJ did not reach step five because he concluded that Farrell could perform past relevant work and was therefore not disabled. (*See* A.R. at 24); *see also Richarson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021) ("If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step.").

decision was supported by substantial evidence, the ALJ's decision must be affirmed, the Commissioner's Motion for Summary Judgment (R. 19) must be granted, and Farrell's Motion for Summary Judgment (R. 16) must be denied. Each of Farrell's arguments will be addressed in turn.

### A. Subjective Complaints of Pain

Farrell claims that the ALJ's decision was "not reasonably supported by the evidence" on account of the ALJ's failure to analyze her self-described limitations. (R. 17 at Page ID 865). She notes that "the ALJ must consider the claimant's pain and the self-described limitations and symptoms associated with it." (*Id*. at Page ID 865-66). Farrell recounts her self-described limitations (*see id*. at Page ID 867-69) and describes the medical evidence supporting those limitations (*see id*. at Page ID 869-70), arguing that the ALJ should have credited her subjective complaints and his failure to do so was inconsistent with the evidence (*see id*. at Page ID 870-74).

As an initial matter, to the extent Farrell argues that it was legal error for the ALJ to weigh the credibility of her subjective complaints, she is misinformed. Importantly, "statements about [a claimant's] pain or other symptoms will not alone establish that [a claimant] is disabled." 20 C.F.R. § 404.1529(a). The Sixth Circuit has noted that because "tolerance of pain is a highly individual matter[,] a determination of disability based on pain by necessity depends largely on the credibility of the claimant." *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). In evaluating a claimant's subjective complaints of pain and other symptoms, ALJs apply the two-step analysis outlined in 20 C.F.R. § 404.1529. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ determines whether there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(b); *Steagall v. Comm'r of Soc. Sec.,* 596 F. App'x 377, 381 (6th Cir. 2015) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)) (noting subjective complaints of pain

6

can support disability finding if record contains "objective medical evidence" of severe medical condition that "can reasonably be expected to produce the alleged disabling pain").[5] Second, the ALJ evaluates whether the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms find support in the record. *See* 20 C.F.R. § 404.1529(c); *Steagall*, 596 F. App'x at 381 ("Even when the record contains [objective medical evidence that can reasonably be expected to produce the alleged disabling pain] the ALJ may also consider the credibility of the claimant's subjective complaints.").[6] In short, it was appropriate (indeed required) for the ALJ to weigh Farrell's subjective complaints against the objective medical evidence and other evidence in the record. *See* SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (emphasis added) ("We *must* consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.").

---

[5] Here, the ALJ determined Farrell's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. (*See* A.R. at 18). Farrell does not challenge the ALJ's findings under this first prong.

[6] Although the term "credibility" has been removed from the analysis, *see* SSR 16-3p, 2016 WL 1119029, at *6 (Mar. 16, 2016), the Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word 'credibility' . . . to 'clarify that subjective symptom evaluation is not an examination of an individual's character,'" *Dooley v. Commissioner of Social Security*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). ALJs continue to be tasked under this second prong as follows:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, *and we will evaluate your statements in relation to the objective medical evidence and other evidence*, in reaching a conclusion as to whether you are disabled. We will consider whether there are any *inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence*, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities *to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.*

§ 404.1529(c)(4) (emphasis added).

7

Here, the ALJ acknowledged the proper legal standard and proceeded to compare Farrell's statements to the evidence in the record. (*See* A.R. at 17). The ALJ characterized Farrell's complaints as follows:

> The claimant has alleged disability due to multiple physical and psychological impairments, including her severe impairments. The claimant's husband, Jody Farrell, later submitted a Third-Party Function Report, wherein he alleged that the claimant's impairments affected her ability to perform various postural activities, such as lifting, standing, walking, sitting, and kneeling. At the hearing, the claimant alleged that she is mainly unable to work due to back pain that worsened after she fell out of a chair. The claimant stated she has a "tremendous amount" of pain in her lower lumbar spine, which shoots down her buttocks and legs. She stated she has no feeling in her right foot. The claimant stated that she takes medication for her pain, including hydrocodone, flexeril and gabapentin, all of which cause drowsiness. Despite medication, the claimant rated her pain as "at least a 6 to 8" on a 10-scale. Functionally, the claimant estimated she can lift a half-gallon of milk. She stated she cannot sit more than 20 minutes at a time or walk more than 5-8 minutes at a time. The claimant stated she sometimes paces to relieve her pain, but she sometimes lays flat to relieve pain. The claimant stated she wears compression stockings "sometimes," but elevates her right leg waist high at other times. The claimant stated she usually orders her groceries online, but usually uses the "scooter" to pick up any items she forgot to order or were missed. She stated she "occasionally" has neck pain when she turns it wrong or lays on it wrong. The claimant alleged that her right hand and fingers go numb when she drives more than 10 minutes. She stated she has difficulty sleeping at night due to discomfort. The claimant alleged that there are times when her pain is "off the pain scale" due to having to sit too long, and she alleged that she has difficulty thinking and concentrating at those times. The claimant stated she spends one day per week in bed due to pain. The claimant stated her medical providers have recommended surgery for her lumbar spine, but she does not want another surgery at the present time. The claimant stated she has not returned to work because her doctors do not feel she is able to drive a school bus any longer.

(*Id*.) (internal citations omitted). After considering the evidence, the ALJ found that while Farrell's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, Farrell's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record." (*Id*. at 18). In explaining this conclusion, the ALJ stated:

8

> At the hearing, the claimant alleged that she has "no feeling…whatsoever" in her right foot and that her doctor will not allow her to drive or return to work due to "permanent nerve damage" in her right leg. She also alleged that she has numbness in her right hand and fingers while driving, cannot sit more than 20 minutes at a time, and cannot walk more than 5-10 minutes at a time. However, her EMG in 2019 showed *acute* radiculopathy, the claimant underwent surgery, and there is no evidence of further EMGs or nerve conduction studies. The evidence of record shows she has routinely demonstrated a normal gait, sensation, reflexes, and coordination, as well as 4+/5 to 5/5 strength in lower extremities and 5/5 strength in her upper extremities since her November 2019 surgery. Moreover, the claimant has reported the ability to garden, walk, clean and organize her home, and drive. The claimant alleged that she lays flat or props her feet up "to a 90-degree angle" when she sits. However, there is no evidence to support that this is necessary. A venous duplex in December 2020 showed a superficial thrombosis of the right leg, and she was advised to wear compression stockings. There is no evidence the claimant sought further treatment for her purported swelling, and she reported that she "sometimes" wears compression socks.
>
> The claimant has alleged that she takes several medications that cause drowsiness. She reported she was prescribed Norco every four hours, which she alleged causes "extreme drowsiness". However, the medical evidence shows she was advised to take it every six hours (as needed), and the claimant has reported taking Norco only at night. The claimant also alleged that she takes 1-2 Flexeril three times per day, which also causes drowsiness. However, based on the medical evidence, it does not appear she takes Flexeril at that frequency (i.e., the claimant was last prescribed 270 Flexeril in September 2020, with one refill prior to September 2021, which would have run out in 180 days at three tablets per day). Moreover, there is no evidence the claimant has reported any such side effects to her providers.

(*Id*. at 22) (emphasis in original) (internal citations omitted).

In coming to this conclusion, Farrell argues the ALJ should have credited her subjective complaints and his failure to do so was inconsistent with the evidence. (*See* R. 17 at Page ID 871-73). Farrell claims that rather than addressing her back pain, the ALJ cherry-picked evidence from the record to support his conclusion that she is not disabled. (*See id*.). Specifically, Farrell asserts that the ALJ improperly focused on Farrell's diminished sensation and nerve pain in her foot and the rate she took her prescription for Flexeril. (*See id*.).

Farrell's argument misses the mark. It bears repeating: "[e]ven if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably

9

support the conclusion reached." *Her*, 203 F.3d at 389-90.  That is, Farrell "cannot establish a lack of substantial evidence by merely pointing to evidence of record that supports [her] position and contradicts the ALJ's findings." *Doyle v. Astrue*, No. 10-47-GFVT, 2011 WL 1226492, at *5 (E.D. Ky. Jan. 7, 2011) (quotations omitted), *report and recommendation adopted*, 2011 WL 1226490 (E.D. Ky. Mar. 29, 2011).  Instead, Farrell must establish that "there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Id*. (quotations omitted).  In considering the intensity, persistence, and limiting effects of an individual's symptoms, ALJs are to "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2017 WL 5180304, at *4; *see* 20 C.F.R. § 404.1529(a).  To assist in this assessment, ALJs look to the following factors:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or [has] taken to alleviate [the claimant's] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or [has] received for relief of [the claimant's] pain or other symptoms; (vi) Any measure [the claimant] use[s] or [has] used to relieve [the claimant's] pain or other symptoms (e.g. lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see* SSR 16-3p, 2017 WL 5180304, at *7-8.

Here, the ALJ properly addressed Farrell's complaints of back pain and the resulting functional limitations.  Rather than avoiding Farrell's complaints of back pain, the ALJ addressed the specific functional limitations Farrell alleged were the result of her back pain.  (*See* A.R. at 17).  These symptoms included the diminished sensation and nerve pain in her foot and hand; her inability to sit for more than 20 minutes or walk for more than 5-10 minutes; and the necessity to

10

lay flat or prop her feet up to a 90-degree angle when she sits. (*See id.* at 22). The ALJ discounted Farrell's testimony concerning those symptoms on account of her routinely normal gait, sensation, reflexes, and coordination; her ability to garden, walk, clean and organize her home, and drive; the lack of evidence demonstrating the need for her to prop her feet up when sitting; the inconsistency with which she wore compression socks as directed by her physician; and the inconsistent rate she took her medication as prescribed. (*See id.* at 22). And in discounting Farrell's testimony, it was proper for the ALJ to look to the objective medical evidence, Farrell's reported daily activities, the prescribed dosage of medication compared with Farrell's reported use, and the additional measures Farrell took to relieve her pain, such as laying flat or propping her feet up. *See* 20 C.F.R. § 404.1529(c)(3)(vi); SSR, 2017 WL 5180304, at *7-8; *see e.g.*, *Stephenson v. Comm'r of Soc. Sec.*, 635 F. App'x 258, 263-64 (6th Cir. 2015) (affirming ALJ's adverse finding as to claimant's self-asserted need to elevate leg). Thus, it cannot be said that the ALJ failed to properly address the functional limitations resulting from Farrell's back pain. Indeed, "an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant." *Coppage v. Berryhill*, No. 1:16-CV-144-GNS-HBB, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017) (citation omitted), *report and recommendation adopted*, 2018 WL 305336 (W.D. Ky. Jan. 5, 2018); *see White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (noting that "cherry picking . . . can be described more neutrally as weighing the evidence"); *see also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("Shepard contends that there is conflicting evidence in the record that demonstrates she was incapable of light work during the relevant period. That may be so, but when the ALJ is presented with the not uncommon situation of conflicting medical evidence, the trier of fact has the duty to resolve that conflict.") (internal alterations, quotations, and citations omitted).

Furthermore, the case law Farrell cites does not change this conclusion. *See, e.g.*, *Hurren v. Comm'r of Soc. Sec.*, Civil Action No. 19-11790, 2020 U.S. Dist. LEXIS 97077, at *26-27 (E.D. Mich. May 4, 2020); *Kessler v. Comm'r of Soc. Sec.*, No. 1:22-CV-00459-JDG, 2022 WL 4907704, at *9 (N.D. Ohio Oct. 4, 2022). First, both *Kessler* and *Hurren* are unpublished cases from other districts within this Circuit and are therefore not binding on this Court. *See Smith v. Astrue*, 639 F. Supp. 2d 836, 841-42 (W.D. Mich. 2009). In addition, both cases are distinguishable. In *Kessler*, the district court determined the ALJ failed to consider the claimant's subjective complaints in evaluating the impact of pain, noting that "[a] careful review of the ALJ's decision reveal[ed] *no mention* of Kessler's testimony that her pain interfered with her attention and concentration." *Kessler*, 2022 WL 4907704, at *11 (emphasis added). Contrary to the ALJ's decision in *Kessler*, the ALJ's decision in this case expressly addressed Farrell's testimony concerning her complaints of back pain and the resulting functional limitations. (*See* A.R. at 17, 22). And in *Hurren*, the district court determined the ALJ relied on "a myopic, if not distorted account of the evidence" in determining the claimant's RFC because the ALJ cited portions of the record that were irrelevant to the claimant's allegations and were contradicted by other, more appropriate portions of the record. *See Hurren*, 2020 U.S. Dist. LEXIS 97077, at *21-26.[7] Unlike the ALJ's decision in *Hurren*, the ALJ's decision in this case was not so far afield to be considered

---

[7] Specifically, the ALJ found the claimant could perform exertionally light work, citing the claimant's failed attempts to quit smoking, a field examiner's November 2014 observation that the claimant did not experience problems walking, and a medical opinion that the claimant was prevented from prolonged standing or long-distance ambulation. *Hurren*, 2020 U.S. Dist. LEXIS 97077, at *21-26. The district court disagreed, noting that the claimant's spine and foot problems were in no way attributable to smoking; that the treatment records after the November 2014 observation overwhelmingly demonstrated the claimant's inability to walk and severe pain; and that despite the ALJ relying heavily on the medical opinion restricting the claimant's ability to stand or ambulate for prolonged periods, the ALJ's RFC required up to four hours of walking or standing every day. *See id*. The district court concluded, "In short, substantial imaging and clinical evidence" demonstrated the claimant experienced "ongoing and significant symptoms resulting from (1) the underlying back pain confirmed by the imaging studies, (2) the failed laminectomy requiring followup fusion surgery, (3) the third surgery for scarring, and (4) complications from the scar tissue removal surgery." *Id*. at *26.

12

outside the "zone of choice within which [administrative] decision makers can go either way," and must therefore be affirmed. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Farrell also argues that in making his credibility determination, the ALJ failed to take stock of her exemplary work history. (R. 17 at Page ID 873-74). Farrell clarifies that she "is not suggesting that her strong work history *necessarily* entitles her to enhanced credibility, or that this factor trumps others. She simply argues that the ALJ was required to consider this highly relevant credibility factor, and he did not." (*Id*. at Page ID 874) (emphasis in original). To the contrary, there is no requirement that an ALJ include a claimant's work history in his credibility determination. *Hawk v. Kijakazi*, Civil Action No. 6:22-028-DCR, 2022 WL 4369944, at *7 (E.D. Ky. Sept. 21, 2022) (citing *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) and then *Mahoney v. Comm'r of Soc. Sec.*, Civil Action No. 3:20-CV-00423-CHL, 2021 WL 4493680, at *5 (W.D. Ky. Sept. 30, 2021)) ("While the ALJ did not include Hawk's work history in her opinion, there is no requirement that she do so."). In addition, the ALJ discussed Farrell's work history with her extensively during the evidentiary hearing. (A.R. at 48-55). Thus, in this case, just as in *Hawk*, "[t]here is nothing to suggest the ALJ did not consider this evidence and [his] failure to discuss it in the written decision does not constitute error." 2022 WL 4369944, at *7.

In sum, the ALJ applied the correct legal standard and his decision to discount Farrell's subjective complaints was supported by substantial evidence; therefore, the ALJ's decision must be affirmed as to that issue.

      **B.**      **Non-severe Mental Impairments**

Next, Farrell claims that in defining her RFC and concluding she could perform full-time light work with certain exertional qualifications, the ALJ failed to account for his determination at

step two that Farrell had mild mental limitations. (*See* R. 17 at Page ID 874-75). Farrell asserts that the ALJ's failure to address those functional limitations in defining her RFC constitutes legal error and that the ALJ's error is not harmless because her past work involved skilled jobs that would be affected by mental limitations. (*Id*. at Page ID 875-78). In other words, Farrell argues her RFC should have included mental limitations.

During step two of the ALJ's analysis, the ALJ is required to consider any mental impairments or limitations. *See* 20 C.F.R. § 404.1520a. In this assessment, the ALJ must consider Farrell's abilities in "four broad functional areas:" the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). Here, the ALJ explained in detail his findings related to each one of these functional areas. (*See* A.R. at 14-15). Ultimately, the ALJ determined that Farrell's mental limitations were no more than "mild," and therefore "nonsevere." (*Id*.) (citing 20 C.F.R. § 404.1520a(d)(1) ("if [the ALJ] rate[s] the degrees of [the claimant's] limitation as 'none' or 'mild,' [the ALJ] will generally conclude that [the claimant's] impairment is not severe")).

Next, in determining Farrell's RFC, the ALJ must assess Farrell's "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). When evaluating mental limitations specifically, the ALJ will "assess the nature and extent of [the claimant's] mental limitations and restrictions and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). Here, the ALJ determined that, at most, the evidence of record supported mild limitations:

> The opinions of the State agency psychological consultants were persuasive. They opined that the claimant did not have a severe psychological impairment, with no more than mild limitations in any of the four areas of the "B criteria". These opinions are consistent with and supported by the evidence of record. Particularly,

14

> the medical evidence does not reflect any specific complaints regarding psychological symptoms, nor does it show the claimant sought any treatment beyond medication from her primary care provider. Additionally, the claimant's mental status examinations have routinely been normal since her amended alleged onset date.

(A.R. at 23) (internal citations omitted).

Mild mental limitations will be considered nonsevere, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). In reviewing the opinions of the state agency medical consultants, the ALJ's decision that Farrell's mild limitations have no impact on her ability to work is supported by substantial evidence. For example, in the initial review of Farrell's disability claim, state agency medical consultant Alex Guerrero M.D. noted that Farrell "gets along with family, friends, and others," "socializes," "can pay attention," and "handles stress well." (A.R. at 79). Therefore, he determined that Farrell's mental limitations "either singly or in combination, do not significantly limit the performance of basic work activities." (*Id.*). On reconsideration, state agency medical consultant Michelle Bornstein, Psy.D. confirmed that although a more recent medical report had been provided, the initial assessment was "supported, consistent and more persuasive," and that the report "does not alter the initial assessment prepared by Dr. Guerrero." (*Id.* at 94). The ultimate RFC only includes "mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). As Farrell's mild limitations "do not significantly limit [her] performance of basic work activities," there was no reason that the ALJ was required to incorporate the mental limitations in Farrell's RFC. (A.R. at 79); *see* 20 C.F.R. § 404.1545(a)(1) ("[the claimant's] residual functional capacity is the most [the claimant] can still do despite [their] limitations"); *Chidsey v. Kijakazi*, No. 1:20-cv-01858, 2022 WL 4599195, at *7 (N.D. Ohio Sept. 30, 2022) (quoting *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th

15

Cir. 2007)) ("In fact, the Sixth Circuit has held that sometimes even those impairments that are deemed 'severe' at Step Two do not always have to be included in the RFC.").

Both parties cite considerable case law discussing the degree to which an ALJ must incorporate step-two mild limitations into the RFC formulation at step four. *Compare, e.g.*, *James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493, at *10 (N.D. Ohio Feb. 20, 2020) (collecting cases finding reversible error when ALJ failed to address claimant's step-two mild limitations in defining RFC), *with Plotkowski v. Comm'r of Soc. Sec.*, No. 2:20-CV-12011, 2022 WL 413371, at *7 (E.D. Mich. Jan. 18, 2022), *report and recommendation adopted sub nom. Plotkowski v. Saul*, No. 20-CV-12011, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022) (collecting cases finding that the lack of reference to mild psychological limitation in the RFC did not constitute error). The Court agrees with Farrell that in defining her RFC, the ALJ was "obligated to consider the combined effect of all of Plaintiff's impairments, *even her nonsevere impairments*." (R. 17 at Page ID 876) (emphasis in original) (citing 20 C.F.R. § 404.1545(e)). However, the ALJ's decision demonstrates that he *did* consider all of Plaintiff Farrell's impairments in defining her RFC.

In *Emard v. Commissioner of Social Security*, the Sixth Circuit discussed the extent to which an ALJ must consider nonsevere impairments when crafting a claimant's RFC. 953 F.3d 844, 851 (6th Cir. 2020). The Circuit noted that the ALJ had expressly stated her decision was controlled by SSR 96-8p. *See id*. The Sixth Circuit then noted that "[d]istrict courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the [RFC] assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." *Id*. (citations omitted). The Sixth Circuit concluded that "[t]he ALJ's express reference to SSR 96-8p, *along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at*

16

*step two of her analysis*, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p" and considered Emard's nonsevere impairments in crafting his RFC. *Id*. at 852 (emphasis added). Thus, several district courts within the Sixth Circuit have found "that *Emard* requires an ALJ to do more than merely state that SSR 96-8p controls their analysis; they must also expressly discuss how the claimant's nonsevere impairments functionally limit the claimant (if at all) in their Step Two analysis." *Harrington v. Saul*, No. 3:20-CV-00852-JRK, 2021 WL 3174273, at *10 (N.D. Ohio July 9, 2021) (collecting cases). More recently, other courts within the Sixth Circuit have found that in order to comply with *Emard*, ALJs must also include a "subsequent assurance that [the ALJ] had considered the entire record and all symptoms." *John S. v. Comm'r of Soc. Sec.*, Civil Action No. 2:22-cv-4207, 2023 WL 6141664, at *4 (S.D. Ohio Sept. 20, 2023) (quoting *Thoenen v. Comm'r of Soc. Sec.*, No. 5:21-cv-1101, 2022 WL 3577414, at *3 (N.D. Ohio Aug. 19, 2022)).

In this case, the ALJ included each of these components in his decision. First, as in *Emard*, the ALJ's decision here explicitly referenced SSR 96-8p as controlling his RFC finding, stating that he "must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p)." (A.R. at 12); *see Emard*, 953 F.3d at 851. Indeed, the ALJ goes on to clarify that "pursuant to SSR 96-8p, [he has] accounted for all of the claimant's 'severe' and 'non-severe' medically determinable impairments when assessing his/her residual functional capacity." (A.R. at 14).

Next, the ALJ thoroughly discussed the functional limitations (or lack thereof) imposed by Farrell's nonsevere mental impairments at step two of his analysis:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The claimant has not alleged any limitation in this area due to psychological impairments. At the hearing, the claimant alleged that she gets "dumb," cannot think straight, and forgets things

17

when her pain is bad. In a Third-Party Function Report, the claimant's husband reported that she did not need reminders for grooming or medication. He also reported that the claimant did not have difficulty following instructions. There is no medical evidence that the claimant has demonstrated any limitations in this area. The limited mental status examinations of record show the claimant has demonstrated normal cognition, mentation, memory, and judgment. She also has not demonstrated any barriers to learning. Considering the overall evidence, I find that the claimant is no more than mildly limited in the area of understanding, remembering, or applying information.

The next functional area is interacting with others. In this area, the claimant has no more than a mild limitation. The claimant's spouse reported that the claimant spends time with others and is able to get along with authority figures "very well". The claimant's treating providers overall do not indicate that the claimant has any particular difficulty getting along with others in the treatment setting (with either staff or other clients) and upon examination, the claimant has routinely demonstrated a normal mood, affect, or behavior since the amended alleged onset date. Considering the overall evidence, I find that the claimant has no more than a mild limitation in the area of interacting with others.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has a mild limitation. The claimant has not alleged any limitation in this area due to psychological impairments. At the hearing, the claimant alleged that she gets "dumb," cannot think straight, and forgets things when her pain is bad. In a Third-Party Function Report, the claimant's husband did not report that the claimant had any problems with concentration. He also reported that she can "always" pay attention and finishes what she starts. There is no evidence the claimant has reported problems in this area during examinations. The limited mental status examinations of record show the claimant has demonstrated normal cognition and mentation, and she has not demonstrated any barriers to learning. Considering the overall evidence, I find that the claimant has a mild limitation in the area of concentration, persistence, or maintaining pace.

The fourth functional area is adapting or managing oneself. In this area, the claimant has no more than a mild limitation. In a Third-Party Function Report, the claimant's husband reported she sometimes needs help dressing or bathing, but he attributed this to pain. He reported that the claimant can handle stress and changes in routine "very well". He also reported the claimant is able to pay bills, handle a bank account, shop in stores and by phone, prepare meals, and perform "light" household chores. The evidence of record does not demonstrate any deficits in this area, as her providers regularly noted that the claimant did not appear in distress during the relevant period. She also routinely demonstrated normal/appropriate behavior. Considering the overall evidence, I find that the claimant has no more than a mild limitation in the area of adapting or managing oneself.

(A.R. at 14-15) (internal citations omitted); *see Emard*, 953 F.3d at 852.

18

Finally, the ALJ expressly states that his subsequent RFC determination was based on "careful consideration of the entire record" and that he "considered all symptoms." (A.R. at 16-17); *see Emard*, 953 F.3d at 851 (noting the ALJ "stated that she had carefully considered the entire record and 'all symptoms'" at step four). Thus, under any reading of *Emard*, the ALJ provided a sufficient basis for the Court to conclude he properly considered all of Farrell's impairments when crafting her RFC.

Farrell resists this conclusion, arguing that boilerplate language cannot cure the ALJ's failure to consider her mental limitations in defining her RFC. (*See* R. 17 at Page ID 878). Notably absent from Farrell's brief is any discussion of *Emard*. (*See generally* R. 17). Indeed, the boilerplate statement Farrell takes issue with is different from the language discussed in *Emard*. (*See id.* at Page ID 878) (targeting the ALJ's statement that ". . . [t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."). But in describing an ALJ's obligations, the Sixth Circuit in *Emard* made no mention of the language Farrell takes issue with. "Boilerplate or not," the ALJ's reference to SSR 96-8p and acknowledgement that he was required to consider all of Farrell's impairments in defining her RFC "is vital to setting forth a sufficient explanation under *Emard*." *John S.*, 2023 WL 6141664, at *4 n.3. Thus, the ALJ's compliance with *Emard* provides a sufficient basis to conclude he properly considered Farrell's mild mental limitations in defining her RFC. And, in any event, the ALJ *did* consider Farrell's mild mental limitations in defining her RFC, as noted previously. (A.R. at 23). Put simply, the ALJ utilized the proper legal standard and his decision was supported by substantial evidence. Therefore, the ALJ's decision must be affirmed.

19

IV.     CONCLUSION

For the reasons stated herein, Plaintiff's arguments lack merit, and the ALJ's decision is supported by substantial evidence. Accordingly, **IT IS ORDERED** as follows:

1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2) Plaintiff's Motion for Summary Judgment (R. 16) is hereby **DENIED**;

3) Defendant Commissioner's Motion for Summary Judgment (R. 19) is hereby **GRANTED**; and

4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 25th day of March, 2024.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\social security\Orders\22-125-CJS Farell SSA MOO.docx